THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT COVELLI, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROBERT COVELLI, Defendant-Appellee.

Second District   Nos. 2—87—0459, 2—87—0545 cons.

Opinion filed June 15, 1989.—Rehearing denied July 11, 1989.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, and Bravos & Trapp, Ltd., of Wheaton (Zachary M. Bravos, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Robert Covelli, was charged by indictment in the circuit court of Du Page County on June 28, 1985, with six counts of murder and one count of armed robbery (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3), 18—2(a)) arising from the killing and armed robbery of Cynthia Princeton on January 2, 1982, at a pawnshop in Elmhurst, Illinois. The armed robbery indictment alleged that

the time in which the instant prosecution was to be commenced did not include the period July 2, 1982, to July 29, 1984, inasmuch as the former date was the date the defendant was indicted in Federal court on charges arising out of this same incident and the latter was the date his conviction was affirmed in *United States v. Covelli* (7th Cir. 1984), 738 F.2d 847.

On December 18, 1986, the defendant filed a motion to dismiss all charges against him on the ground of violations of his State and Federal constitutional right to a speedy trial. In a second motion filed that same date, he sought dismissal of counts V, VI and VII inasmuch as the prosecution for armed robbery did not commence within the applicable three-year statutory limitations period (Ill. Rev. Stat. 1987, ch. 38, par. 3—5(b)). Defendant also sought dismissal at that time of all charges on the ground of former jeopardy as a result of the Federal court prosecution (Ill. Rev. Stat. 1987, ch. 38, par. 3—4(c)(1)). On January 8, 1987, the State moved to strike all motions as being untimely, and to strike the defendant's speedy trial claim on the basis he failed to allege prejudice.

The day after a hearing held on May 11, 1987, the court rejected the State's timeliness argument, granted the defendant's motion to dismiss count VI (armed robbery) for failure to comport with the requirements of the statute of limitations, and denied all other motions to strike and dismiss. Pursuant to Supreme Court Rule 604, the State appeals the dismissal of count VI, and the defendant appeals the denial of his motions to dismiss on the ground of former jeopardy. (107 Ill. 2d Rules 604(a)(1), (f).) The cases were consolidated for appeal on the State's motion.

We first address the defendant's motion to strike page 4 of the State's answer brief titled "Corrected Statement of Facts" which was ordered to be taken with the case. In its corrected statement, the State asserts the "Statement of Facts" in the defendant's brief filed April 28, 1988, "is inaccurate and incomplete, in that it does not summarize the whole procedural history of the defendant's attempts to attain dismissal of the charges against him." Defendant argues the State's corrected statement does not recite in what regard he has misstated or omitted facts and contends its motions should thus be regarded as a type of harassment which is violative of the Code of Professional Responsibility. (107 Ill. 2d Canon 7.) *Inter alia,* Canon 7 prohibits a lawyer during the course of his representation of a client from asserting a position "when he knows or when it is obvious that such action would serve merely to harass *** another." (107 Ill. 2d R. 7—102(a)(1).) Defendant asserts the State's failure to specifically iden-

tify his purported inaccuracies or omissions renders its corrected statement nothing more than "a suggestion that he is trying to hoodwink the court and may be considered a type of harassment."

In its objection to the defendant's motion, the State points out it provided a complete statement of facts in its appellant's brief in the consolidated appeal (No. 2—87—0545) which was filed on February 29, 1988 (prior to the defendant's appeal), and it did not seem necessary to again summarize the facts in order to illustrate the defendant's error.

We agree with the State that the defendant's statement of facts is inaccurate in that it is incomplete. Defendant filed not one motion to dismiss, as implied by his statement of facts, but motions "A" through "D" which were grounded on three different theories. The court did not simply "den[y] the motion" as stated by the defendant; rather, the defendant's motions to dismiss were denied in part and granted in part inasmuch as the court granted his motion to dismiss count VI for failure to comply with the statute of limitations. The fact the court granted the defendant's motion to dismiss count VI is the basis for the State's argument that the first issue raised by the defendant in his appeal—that count VI is barred under former jeopardy principles—is moot. We find no error in the manner in which the State has presented its corrected statement. The causes were consolidated for appeal on the State's motion on August 3, 1987, and the State's brief in No. 2—87—0545, which included its complete "Statement of Facts," was filed before the defendant's brief in No. 2—87—0459. Accordingly, the basis for the State's criticism of the defendant's statement of facts as "inaccurate and incomplete" is as obvious to this court as it must have been or should have been to the defendant.

We conclude the basis for the defendant's motion to strike page 4 of the State's answer brief is unfounded, and the motion is denied.

STATE'S APPEAL

NO. 2—87—0545

On the defendant's motion, the trial court dismissed the armed robbery indictment against him for failure to comply with the applicable three-year statute of limitations. (Ill. Rev. Stat. 1987, ch. 38, par. 3—5(b).) Rejecting the State's argument the limitations period was tolled during the time the defendant was being prosecuted in Federal court, the court ruled the exclusion from the limitations period provided in section 3—7 of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 3—7(c)) applies only to prosecutions pending in

the State of Illinois.

■ Preliminarily, the State argues the defendant's motion to dismiss was untimely and should not have been entertained by the trial court. It points to subsection 114—1(b) of the Code, which provides:

> "The court shall require any motion to dismiss to be filed within a reasonable time after the defendant has been arraigned. Any motion not filed within such time or an extension thereof shall not be considered by the court and the grounds therefor, except as to subsections (a)(6) and (a)(8) of this Section, are waived." Ill. Rev. Stat. 1987, ch. 38, par. 114—1(b).

The State notes the defendant was arraigned on December 3, 1985, and his motion to dismiss was not filed until more than one year later on December 18, 1986. Thus, it contends, the court should have found the defendant had waived the issue.

The defendant answers that the State acquiesced in the late filing by failing to object to the court's determination that pretrial motions need not be filed until after the completion of discovery. Defendant further argues it was within the court's discretion to extend the time for filing pretrial motions.

The State's first objection to the pretrial motion procedure was not made until a September 26, 1986, hearing. Substantial discovery had been completed by then, and the court required pretrial motions to be filed. The defendant subsequently filed a motion to suppress on October 10, and his several motions to dismiss were filed on September 18. On January 8, 1987, the State moved to strike the motions to dismiss for untimeliness, and the hearing on the motions was held on May 11. In denying the State's motion to strike for untimeliness, the court acknowledged that it had to "share some of the problem [of untimeliness] and delays in [the] matter." We find the defendant did not waive the limitations issue by his ostensibly untimely filed motions to dismiss.

It is generally true, as the State argues, that the filing of the instant motion was not dependent upon the completion of discovery inasmuch as the dates of the crime and the indictment were known from the beginning. However, subsection 114—1(b) of the Code clearly affords the trial court discretion to extend the time for filing, and it did so here. As the defendant notes, the State has not argued the court did not have this discretion or that it was abused in this cause. The court may have felt the procedure it prescribed was warranted in light of the fact that defendant had three different appointed attorneys and was in the process of obtaining transcripts of his previous prosecution in Federal court which could possibly have been admitted

to establish a double jeopardy claim under subsection 114—1(a)(2) of the Code. (Ill. Rev. Stat. 1987, ch. 38, par. 114—1(a)(2); see *People v. Rothermel* (1982), 88 Ill. 2d 541, 548.) That aside, it is evident from the record the defendant believed discovery was to be completed before pretrial motions were to be filed. When the court required on September 26 that such motions be filed, the defendant filed his motion to suppress on October 10 and the instant motion on December 18.

No similar pretrial motion deferral procedure is evident in *People v. Dimond* (1977), 54 Ill. App. 3d 439, which is relied on by the State in support of its argument. In that case, the defendant was arraigned on June 1, 1976, and on September 22 he filed a motion to dismiss on the ground he was denied his right to communicate with counsel. After concluding the trial court did not err in denying the defendant's motion inasmuch as the ground specified is not one specifically enumerated in section 114—1 nor did it amount to a clear denial of due process, the court in *dictum* determined the trial court also properly denied the motion to dismiss as being untimely. We find *Dimond* distinguishable and not controlling under the circumstances presented here. What constitutes a "reasonable time" necessarily falls within the discretion of the trial court. It is axiomatic in such instances that the trial court's decision will not be reversed on review unless it constitutes an abuse of discretion. The court's willingness here to accept a share of the blame for the defendant's failure to file his motions to dismiss at an earlier date suggests the defendant was indeed complying in good faith with what he perceived to be the scope and extent of the procedure prescribed by the court. We note the State does not reply to the defendant's argument that it acquiesced in the procedure prescribed by the court. It is well established that a party may not complain on appeal of a procedure at trial in which he acquiesced. See *People v. Love* (1986), 140 Ill. App. 3d 651; *People v. Benka* (1983), 117 Ill. App. 3d 221.

We conclude the defendant's motion to dismiss was not untimely.

On the merits of the issue, the State next argues it was error for the court to dismiss count VI for armed robbery in light of the exclusion from the limitations period which is provided in section 3—7 of the Code. In pertinent part, that section provides:

"The period within which a prosecution must be commenced does not include any period in which:

\* \* \*

(c) A prosecution is pending against the defendant for the same conduct, even if the indictment or information which com-

mences the prosecution is quashed or the proceedings thereon are set aside, or are reversed on appeal." Ill. Rev. Stat. 1987, ch. 38, par. 3—7(c).

The State contends the term "prosecution" used in this subsection should be broadly construed to include Federal as well as Illinois prosecutions, and, thus, the period of the defendant's prosecution and appeal in Federal district court was excludable from the three-year limitations period. The defendant argues, as he did below, that the definitions of the terms "prosecution" and "offense" in the Code support the finding that only the period during which a prosecution in Illinois is pending is excluded from the limitations period. The State argues this strict adherence to statutory definitions is not required "when a particular context clearly requires a different meaning." (Ill. Rev. Stat. 1987, ch. 38, par. 2—5.) It posits that such a "different meaning" is required here to encompass prosecutions in foreign jurisdictions. It points to situations in which additional charges might be added to a pending prosecution even if such additional charges would otherwise be outside the scope of the statute of limitations and regardless of the jurisdiction in which the original charges were brought. It further argues that delay in bringing a prosecution may be justified where the prosecutor was unaware of the Illinois involvement in the offense. It asserts the prosecutor may choose to await the outcome of the trial in the other jurisdiction before bringing charges in Illinois or may find it impossible to present the trial in Illinois when the necessary evidence is situated in another jurisdiction.

The State represents that it has researched the question and found no authority adopting or rejecting its argument. The scope of the State's search is not known. The defendant represents he has been unable to find any Illinois authority on this question. When no Illinois authority is in point, parties to an appeal have an obligation to cite existing appropriate authority from other jurisdictions when available. (*Kelley v. Kelley* (1925), 317 Ill. 104; *In re Estate of Melvin* (1972), 5 Ill. App. 3d 463.) Our research has failed to uncover any Illinois or foreign jurisdiction authority on this question. Accordingly, unencumbered by case law, we are guided by principles of statutory construction.

" 'The language of a statute must be given its plain and ordinary meaning. "*** the intention of the legislature should be ascertained ***. This is to be done primarily from a consideration of the legislative language itself, which affords the best means of its exposition, and if the legislative intent can be ascertained therefrom it must prevail and will be given effect

without resorting to other aids for construction." ' " (*People v. Moore* (1978), 69 Ill. 2d 520, 523, quoting *Franzese v. Trinko* (1977), 66 Ill. 3d 136, 139-40.)

Words employed in a statute should be given their plain, ordinary or commonly accepted meaning unless to do so would defeat legislative intent. (*People v. Hicks* (1984), 101 Ill. 2d 366; *People v. Crete* (1985), 133 Ill. App. 3d 24, *aff'd* (1986), 113 Ill. 2d 156.) If there are specific definitions of any terms within an enactment, those definitions, when reasonable, will be sustained for purposes of the act to the exclusion of hypothetical indulgences. (*Davis v. Chicago Housing Authority* (1988), 176 Ill. App. 3d 976, 979; *County of Lake v. Zenko* (1988), 174 Ill. App. 3d 54, 60.) In addition to the language used, the court may also consider the evil to be remedied or the object to be attained by the statute. *People v. Dednam* (1973), 55 Ill. 2d 565.

The statute of limitations applicable to criminal cases is enacted for the purpose of allowing the accused to defend himself while the charges are new and the evidence can more readily be obtained and is not grounded upon mere delay in the prosecution but, rather, upon delay in commencing the same. (*People v. Buckner* (1917), 281 Ill. 340.) Statutes of limitations are to be liberally construed in favor of a defendant:

"A statute of limitation in criminal cases is an act of grace; a surrendering by the sovereign of its right to prosecute. The statute is not a process to be strictly and grudgingly applied, but an amnesty declaring that after a certain time oblivion shall be cast over the offense and that the offender may from thenceforth cease to preserve the proofs of his innocence, for the proofs of his guilt are blotted out. Such statutes must be liberally construed, not only because such liberality of construction belongs to all acts of amnesty and grace, but because the very existence of the statute is a recognition by the legislature of the fact that time gradually wears out proofs of innocence and a notification that a fixed and positive period established by it destroys all proofs of guilt." *People v. Ross* (1927), 325 Ill. 417, 421.

■ With these principles in mind, we agree with the defendant that only the period during which a prosecution is pending in Illinois may be excluded from the limitations period. Defendant's argument is grounded on the specific definition of the terms "prosecution" as used in section 3—7 and "offense," which is used in the definition of "prosecution." "Prosecution" is defined as "all legal proceedings by which a person's liability for an *offense* is determined, commencing with the

return of the indictment or the issuance of the information, and including the final disposition of the case upon appeal." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 2—16.) " 'Offense' means a violation of any penal statute *of this State.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 2—12.

We reject the State's argument that the period of the pendency of the prosecution against the defendant in the United States District Court tolled the running of the limitations period in Illinois. Such a construction of the statute applied to the instant facts would amount to an extension of the time period within which a prosecution must be *commenced,* a matter which is already specifically regulated by the Code (Ill. Rev. Stat. 1987, ch. 38, par. 3—6).

We conclude the armed robbery indictment against the defendant properly was dismissed.

### DEFENDANT'S APPEAL
### NO. 2—87—0459

The defendant's first contention is that count VI charging him with armed robbery is barred on statutory double jeopardy grounds (Ill. Rev. Stat. 1987, ch. 38, par. 3—4(c)(1)) inasmuch as he was convicted in Federal court of a violation of the Hobbs Act (18 U.S.C. §1951 (1982)), which included robbery, a lesser-included offense of armed robbery (*People v. Willis* (1977), 50 Ill. App. 3d 487). (See *United States v. Covelli* (7th Cir. 1984), 738 F.2d 847.) The State argues this issue is moot, inasmuch as the court dismissed count VI, albeit on the grounds it was time barred. An issue is moot when it no longer presents an actual controversy over the rights of any party. (*People v. Meece* (1987), 162 Ill. App. 3d 658, 660.) Inasmuch as we have decided above that count VI was properly dismissed as being time barred, we ordinarily would consider the instant issue moot. However, defendant's second contention on appeal relies in part upon the argument he presents in connection with this first issue, and we proceed to consider it on the merits.

The defendant's contention is that because his conviction in Federal court under the Hobbs Act included proof that he committed robbery, he could not thereafter be prosecuted in the circuit court of Du Page County for armed robbery as a result of the same incident.

██ The fifth amendment guarantee against double jeopardy (U.S. Const., amend. V), which is enforceable against the States under the fourteenth amendment (U.S. Const., amend. XIV; *Benton v. Maryland* (1969), 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056), provides three types of protection. It protects against a second prosecution for

the same offense after (1) acquittal or (2) conviction and (3) multiple punishments for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072.) To give rise to a valid claim of double jeopardy, be it based on constitutional or statutory grounds, it must be shown that the two offenses charged are the same offense. *People v. Johnson* (1978), 63 Ill. App. 3d 248, 250.

■ The test to determine whether two offenses are really the same offense for purposes of double jeopardy was enunciated in *Blockburger v. United States* (1932), 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180, to wit, if the statutory elements of each of the offenses require an element of proof which the other offense does not include, then, for purposes of double jeopardy analysis, the offenses are not the same. (*Blockburger*, 284 U.S. at 304, 76 L. Ed. at 309, 52 S. Ct. at 182; see also *Brown v. Ohio* (1977), 432 U.S. 161, 166, 53 L. Ed. 2d 187, 194-95, 97 S. Ct. 2221, 2225-26; *People v. Kaye* (1987), 154 Ill. App. 3d 562, 568.) Although successive prosecutions of a defendant for the same offense by separate sovereigns, such as the Federal government and the State, are permitted (*Bartkus v. Illinois* (1959), 359 U.S. 121, 3 L. Ed. 2d 684, 79 S. Ct. 676), section 3—4 of the Code in pertinent part prohibits such successive prosecutions "unless each prosecution requires proof of a fact not required in the other prosecution." Ill. Rev. Stat. 1987, ch. 38, par. 3—4(c)(1).

A violation of the Hobbs Act is established by proof of (1) interference with commerce by robbery or extortion or attempting or conspiring to do either; or (2) the commission or threat of physical violence in furtherance of a plan to interfere with interstate commerce. (18 U.S.C. §1951(a) (1982); *People v. Kaye* (1987), 154 Ill. App. 3d 562, 568-69.) As defined in section 1951 of the Hobbs Act, " 'robbery' means the unlawful taking or obtaining of personal property from a person or in the presence of another, against his will, by means of actual or threatened force." (18 U.S.C. §1951(b) (1982).) In Illinois, the offense of armed robbery is established by proof that a person committed robbery "while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." (Ill. Rev. Stat. 1987, ch. 38, par. 18—2.) A person commits robbery "when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." Ill. Rev. Stat. 1987, ch. 38, par. 18—1.

In defining the elements of the offenses for double jeopardy purposes:

"[W]e look not only to the statutory elements but also to the elements of the species of lesser-included offenses ***. *** [I]f

a person is convicted of the more serious offense, he may not be subsequently prosecuted for an offense consisting solely of one or more of the elements of the crime for which he has already been prosecuted. *** [T]he reverse is also true. If the defendant has been convicted of a lesser-included offense, he may not be thereafter prosecuted for the greater offense." (*People v. Jackson* (1987), 118 Ill. 2d 179, 187.)

As defendant notes, robbery is a lesser-included offense of armed robbery. *People v. Willis* (1977), 50 Ill. App. 3d 487.

■ The question presented, then, is whether the defendant's impending prosecution in Illinois for armed robbery is barred because it amounts to a prosecution of the same offense of which he was convicted in Federal court. More specifically, the question is whether the Hobbs Act offense and the armed robbery offense each requires an element of proof which the other offense does not include.

In support of his position that the two offenses are the same, defendant argues that the element of proof of interference with commerce required in the Hobbs Act violation is merely a "jurisdictional" requirement and not a "genuine" element which substantively distinguishes a Hobbs Act robbery from a State armed robbery prosecution. Defendant notes it has been recognized that almost all Federal criminal statutes are drafted so as to require some proof of a connection with Federal interests (*United States v. Perez* (2d Cir. 1970), 426 F.2d 1073, *aff'd* (1971), 402 U.S. 146, 28 L. Ed. 2d 686, 91 S. Ct. 1357), and relies on *United States ex rel. Woollums v. Greer* (7th Cir. 1984), 728 F.2d 918, in support of his position that the element of interference with commerce is jurisdictional and not substantive.

We find defendant's argument unpersuasive. At issue in *Perez* was whether the extortionate credit transactions statute under which the defendant was convicted was unconstitutional in prohibiting all extortionate credit transactions without requiring a showing in a particular case of an effect on interstate commerce or a connection with the Bankruptcy Act. (*Perez*, 426 F.2d at 1074.) The court conceded at the outset:

"[A]lmost all Federal criminal statutes are so drafted that the connection with Federal interests—the Federal jurisdictional peg—*must be proved in each case because such connection is incorporated into the definition of the offense. See, e.g., The Hobbs Act, 18 U.S.C. §1951 (obstructing or affecting interstate commerce or movements of commodities in commerce by robbery or extortion).*" (Emphasis added.) *Perez*, 426 F.2d at 1075.

*Perez* continued, however, noting that proof of this Federal juris-

dictional peg is not constitutionally *required,* and "Congress can regulate intrastate transactions if a proper determination has been made that *as a class* such transactions affect or involve interstate commerce." (Emphasis in original.) (*Perez,* 426 F.2d at 1077.) Quite clearly, then, *Perez* supports the conclusion that proof that commerce was obstructed, delayed or affected *is* a substantive element of a Hobbs Act offense. 426 F.2d at 1075; accord *Stirone v. United States* (1960), 361 U.S. 212, 218, 4 L. Ed. 2d 252, 257, 80 S. Ct. 270, 274; *People v. Kaye* (1987), 154 Ill. App. 3d 562, 568-69.

*United States ex rel. Woollums v. Greer,* also cited by the defendant, does not support a contrary conclusion. In that case, the defendant was charged under a Quincy, Illinois, ordinance for interfering with a city police officer after the defendant was found tampering with an automobile. The defendant falsely claimed the automobile belonged to his brother and subsequently struck the officer, then fled, and then kicked the officer in the ensuing pursuit and scuffle. The Quincy ordinance provided " 'it shall be unlawful to interfere with or hinder any officer or employee of this city while engaged in the duties of his office.' " (*Woollums,* 728 F.2d at 922.) The defendant posted bond, and when he failed to appear, the court entered an *ex parte* judgment against him in the amount of $100 and ordered his bond to be applied in satisfaction of the judgment.

The defendant was later indicted and convicted by a jury on a charge of aggravated battery arising out of the same incident in that he "intentionally and knowingly, without legal justification, caused bodily harm to an individual he knew to be a peace officer, while the officer was engaged in the execution of his official duties." (*Woollums,* 728 F.2d at 922.) His conviction and sentence were affirmed (*People v. Woollums* (1978), 63 Ill. App. 3d 602), and the Illinois Supreme Court denied leave to appeal. His amended petition for post-conviction relief was dismissed.

He then filed a petition for writ of *habeas corpus* contending in part that his prosecution for and conviction of aggravated battery after the entry of the *ex parte* judgment on the ordinance violation for interfering with an officer violated the double jeopardy clause. The petition was denied by a United States magistrate who found there were no "multiple punishments" because the forfeiture of the defendant's bail did not constitute criminal punishment. The magistrate also rejected the defendant's argument that interfering with an officer is a lesser-included offense of aggravated battery because the ordinance requires proof that the person interfered with was a *city* officer or employee whereas the statute did not.

The court of appeals readily rejected the magistrate's reliance on the "local connection" distinction to find the existence of two offenses. The court found that to accept this distinction would impermissibly undercut the Supreme Court's decision in *Waller v. Florida* (1970), 397 U.S. 387, 25 L. Ed. 2d 435, 90 S. Ct. 1184. It was determined in *Waller* that successive prosecutions in municipal and State courts are not permitted as being prosecutions by separate sovereign entities inasmuch as municipal courts are part of one sovereign judicial system: the State.

> " 'Political subdivisions of State—counties, cities, or whatever—*** have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions.' " *Waller*, 397 U.S. at 392, 25 L. Ed. 2d at 439, 90 S. Ct. at 1187, quoting *Reynolds v. Sims* (1964), 377 U.S. 533, 575, 12 L. Ed. 2d 506, 535, 84 S. Ct. 1362, 1388.

Accordingly, *Woollums* held that successive prosecutions under local and State laws are not permitted solely because establishment of the local offense requires proof of " 'local connection.' " *Woollums*, 728 F.2d at 923.

The instant cause, of course, falls within the dual sovereignty doctrine (*Abbate v. United States* (1959), 359 U.S. 187, 3 L. Ed. 2d 729, 79 S. Ct. 666; *Bartkus v. Illinois* (1959), 359 U.S. 121, 3 L. Ed. 2d 684, 79 S. Ct. 676), which permits successive prosecutions by the State and Federal governments since they are separate sovereigns.

We conclude the defendant's prosecutions under the Hobbs Act and for armed robbery each require proof of an element which the other does not. The Hobbs Act requires proof of interference with commerce, and armed robbery requires proof that the offender carried or was otherwise armed with a dangerous weapon.

Thus, had the court not dismissed the armed robbery count against the defendant as being time barred, that count would not have been barred on double jeopardy grounds.

■ The defendant's next contention—premised upon a resolution of the preceding issue favorable to him—is that counts V and VII charging felony murder based on armed robbery must be dismissed. His argument is that armed robbery is a lesser-included offense of felony murder and prosecution of him for armed robbery is barred by his former prosecution for robbery under the Hobbs Act.

As discussed above, however, prosecution of the defendant for armed robbery would not be barred on double jeopardy ground because each prosecution required proof of an element which the other

did not. Similarly here, the Hobbs Act element that the offense affected interstate commerce is not one which is required in a felony-murder prosecution, and the felony-murder-based-on-armed-robbery elements that the defendant was armed with a dangerous weapon and a death occurred while he was attempting to or was committing the armed robbery are not required in a Hobbs Act prosecution. Consequently, the two offenses are not the same for double jeopardy purposes, and the court did not err in not dismissing them.

■ The defendant's final contention is that counts I through IV charging him with murder (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (a)(2)) should have been dismissed because the murder was one of the overt acts alleged in the Federal charge of conspiracy to transport stolen merchandise in interstate commerce. (*Covelli*, 738 F.2d at 855; 18 U.S.C. §§2314, 371 (1982).) We disagree.

The Federal indictment charged defendant with conspiracy:

"To transport in interstate commerce goods, wares, merchandise, and money of the value of $5,000.00 or more, knowing the same to have been stolen, *** and to receive, conceal, store, sell and dispose of goods, wares, merchandise, and money of the value of $5,000.00 or more which were moving as, were part of, or which constituted interstate commerce, knowing the same to have been stolen.

* * *

In furtherance of the conspiracy and to effect the objects thereof, at the times herein mentioned, the [defendant] did commit certain overt acts, including but not limited to the following:

1. On January 2, 1982, defendant Robert Frank Covelli did murder Cynthia Gonzalez Princeton *in order to steal jewelry, coins, gems, gold, currency, and other goods located at the P.A.G. Ltd.*, Elmhurst, Illinois." (Emphasis added.)

It is clear from the court's opinion in *United States v. Covelli* (7th Cir. 1984), 738 F.2d 847, 855, that evidence of Princeton's murder was presented at the defendant's trial in Federal court.

Count I for murder charged the defendant shot Cynthia Princeton "without lawful justification and with the intent to kill" her. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1).) Count II charged he shot Cynthia Princeton "without lawful justification and with the intent to do great bodily harm" to her. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1).) Count III charged he shot Cynthia Princeton "without lawful justification *** knowing said act would cause [her] death." (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(1).) Count IV charged he shot Cynthia

Princeton "without lawful justification \*\*\* knowing said acts [*sic*] created the strong probability of death or great bodily harm" to her. Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(2).

Relying on *Harris v. Oklahoma* (1977), 433 U.S. 682, 53 L. Ed. 2d 1054, 97 S. Ct. 2912, and *Illinois v. Vitale* (1980), 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260, the defendant argues it does not matter that the government could have charged an act other than Cynthia Princeton's murder as an act in furtherance of the conspiracy. (In fact, the Federal indictment did allege other overt acts in furtherance of the conspiracy.) In *Harris*, the court held that the defendant's conviction of felony murder based on a killing in the course of a robbery with firearms barred a subsequent prosecution against the same defendant for the underlying robbery with firearms, even though any number of felonies could underlie a felony-murder prosecution. As explained in *Vitale*, the court treated a killing in the course of such a robbery as itself a separate statutory offense and the underlying robbery as a species of lesser-included offense. *Vitale*, 447 U.S. at 420, 65 L. Ed. 2d at 238, 100 S. Ct. at 2267.

Defendant fails to refute, however, the State's argument that the overt-act murder charged in the Federal indictment does not allege any specific intent as do each of the four Illinois murder counts. As the State also points out, the defendant's argument as to this issue *does not include* counts V and VII of the Illinois indictment, which charged him with felony murder. It has been held that a defendant may be convicted of both murder and felony murder since each offense requires an element of proof which the other does not. (*People v. Miller* (1980), 89 Ill. App. 3d 973, *cert. denied* (1981), 454 U.S. 871, 70 L. Ed. 2d 175, 102 S. Ct. 339.) To be convicted of murder under the felony-murder doctrine, the accused need not have intended to kill. *People v. Moore* (1983), 95 Ill. 2d 404.

Because the overt act underlying the defendant's Federal conspiracy conviction and the Illinois murder charges each contain an element of proof which the other does not, they are not the same offense, and no dismissal on double jeopardy grounds is warranted.

The judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*

INGLIS and REINHARD, JJ., concur.